**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| FELICIA PLUNKETT, | : | |
| | : | |
| Claimant, | : | |
| | : | |
| v. | : | CASE NO. 3:12-CV-123-CDL-MSH |
| | : | Social Security Appeal |
| CAROLYN COLVIN, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

_____

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for supplemental security income, finding that she was not disabled within the meaning of the Social Security Act and Regulations.  Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).  All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied.  *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam).  "Substantial evidence is something more than a mere scintilla, but less than a preponderance.  If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d

1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The claimant bears the initial burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir.1986). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).[2] A claimant seeking Social Security disability benefits must demonstrate that he/she suffers from an impairment that prevents him/her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. ▪ 423(d)(1). In addition to meeting the requirements of

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act.  20 C.F.R. ▪ 404.1 *et seq*.

Under the Regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner determines whether the claimant is working.  *Id.*  If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  *Id.*  Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments.  *Id.*  Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the AListing@.  *Id.*  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  *Id.*  Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Id.*  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

### Administrative Proceedings

Claimant applied for supplemental security income on August 17, 2007, alleging

disability as of May 10, 2007, due to panic disorder, depression, high blood pressure, arthritis, fashitis (sic), tendonitis, chronic back pain, and "being monitored since stage one cancer cells were removed from my cervix." (Tr. 166; ECF No. 9.) Claimant's application was denied, and Claimant timely requested a hearing before an Administrative Law Judge ("ALJ"). The Claimant appeared before an ALJ for a hearing on December 10, 2010, and following the hearing, the ALJ issued an unfavorable decision on April 22, 2011. (Tr. 14-25.) The Appeals Council ultimately denied Claimant's Request for Review on July 25, 2012. (Tr. 1-4.) This appeal followed.

## Statement of Facts and Evidence

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. (Tr. 18.) The ALJ found that Claimant had osteoarthritis, tendonitis of the right ankle, degenerative disc disease, plantar fasciitis, obesity, anxiety, and depression, which were determined to be severe. (*Id.*) The ALJ then determined that Claimant's severe impairments did not meet or medically equal, either individually or any combination, any one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ next found that Claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations: she is unable to climb ladders, ropes or scaffolds; she may frequently climb stairs and ramps; and she may frequently balance, stoop, kneel, crouch, and crawl; and she can only

understand, remember, and carry out simple tasks.  (Tr. 19-20.)  Based on her RFC and the medical evidence, the ALJ then determined that Claimant had no past relevant work. (Tr. 24.)   The ALJ determined that at the time of her date last insured that Claimant was 33 years old at the time she filed her application, which is considered to be a younger individual.  (*Id.*)  The ALJ further found that Claimant had a high school education and could communicate in English.  (*Id.*)   After consulting the Medical-Vocational Rules (GRIDS) and utilizing the testimony of a Vocational Expert ("VE"), the ALJ determined that Claimant was not disabled within the meaning of the Regulations and that there were jobs available which existed in significant numbers that Claimant could perform.  (*Id.* at 25.)

## ISSUES

I.      **Whether the ALJ erred in evaluating the opinions of the medical providers.**

II.     **Whether the ALJ erred in assessing Claimant's residual functional capacity (RFC).**

## DISCUSSION

I.      **Did the ALJ err in evaluating the opinions of the Claimant's medical providers?**

Claimant's first issue alleges that the ALJ erred in failing to indicate what weight he gave to the opinions of one of her treating physicians, Dr. Hall, and an examining psychologist, Dr. Huthwaite.   (Cl.'s Br. 9; ECF No. 10.)  Claimant further contends that both of the medical providers gave opinions regarding her ability to handle stress, but the ALJ failed to evaluate the same, nor did the ALJ evaluate the effect of this limitation on

her ability to work.  (*Id.*)

It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it.  *Phillips v. Barnhart,* 357 F.3d 1240, 1241 (11th Cir. 2004) (quotation and citation omitted).  The Eleventh Circuit has found that "good cause" exists where:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*

The Regulations state that the weight afforded a medical source's opinion on the issues of the nature and severity of a claimant's impairments is analyzed with respect to factors including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence the medical source submitted to support the opinion, the consistency of the opinion with the record as a whole, and the specialty of the medical source.  20 C.F.R. §§ 416.927(c) and 404.1527(c).  The Regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2); *see*  SSR 96-5p.  The ALJ can reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician.  *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

As to Claimant's contention that the ALJ failed to give weight to the opinions of Drs. Hall and Huthwaite, the record reveals that the ALJ implicitly found Dr. Hall's opinion was accorded some weight as referenced in his RFC determination and the hypothetical asked of the VE.  (Tr. 24.)  Thus, the ALJ's failure to plainly state what weight he gave to Dr. Hall's opinion is harmless in this case as this Court is able to determine that it was accorded weight.  The ALJ then explicitly stated that he gave great weight to the consultative examining psychologists, one of whom was Dr. Huthwaite. (*Id.*)   s such, no reversible error resulted from a failure of the ALJ to state the weight he gave to the medical opinions at issue.

Claimant also contends that the ALJ erred by not making an explicit finding with regard to her ability to manage work-related stress.  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.*  In this case, the ALJ concluded that Claimant retained the RFC to perform unskilled work that required only that she be able to understand, remember, and carry out simple tasks.  (Tr. 18-25.)  In doing so, the ALJ adequately reflected the Claimant's stress response to the ordinary demands of unskilled work in his RFC assessment.

7

Claimant points out, correctly, that Dr. Huthwaite, the psychiatric consultative examiner, noted that Claimant was at moderate risk to decompensate under stress, and that Dr. Hall found that Claimant was somewhat likely to decompensate or become unable to function under stress.  (Cl.'s Br. 12.)  However, Dr. Huthwaite also concluded that Plaintiff could understand and follow simple instructions and directions, that her attentional capacity seemed adequate and that she could communicate adequately with others. (Tr. 255).

As to Dr. Hall's opinion, wherein he found Claimant to have a normal ability to get along with the public, with supervisors, and with coworkers, Dr. Hall only found Claimant's ability to understand, remember, and carry out simple instructions to be mildly diminished. (Tr. 284).  Further, Dr. Hall found that Claimant had a normal ability to deal with changes in a work setting and to make simple work-related decisions.  (Tr. 285.)

Thus, although the ALJ did not specifically address the medical providers' references to Claimant's difficulties with stress, the ALJ's opinion (when considered as a whole) supports the conclusion that Claimant can perform the basic mental demands of unskilled work with her limitations.

## II.     Did the ALJ err in assessing Claimant's residual functional capacity (RFC)?

Claimant also contends that the ALJ erred in failing to incorporate all of the limitations found in the medical opinions he credited which resulted in reversible error. (Cl.'s Br. 11.)  Claimant argues that the ALJ stated that he gave great weight to the

opinions of the state agency psychologists, one of whom found that she had moderate

limitations in her ability to interact appropriately with the general public, or to accept

instructions and respond appropriately to criticism from supervisors, and had moderate

limitations in her social functioning and concentration, persistence, and pace.   (*Id.*)

Based on those opinions, the ALJ found that Claimant was moderately impaired in social

functioning.  (*Id.* at 12.)  However, Claimant contends that when he evaluated Claimant's

remaining work abilities, the ALJ "failed to account for the limitations that he accepted in

her ability to interact with the general public or supervisors, and he provided no

explanation for his failure to include these limitations."  (*Id.*)

        The record reveals that during the administrative hearing in this case, the ALJ

asked the Vocational Expert ("VE") several hypothetical questions.  (Tr. 54.)  Relevant to

this issue, the ALJ asked:

> ALJ:  Please assume a hypothetical person of claimant's age, education, with no
> past relevant work history.  Further assume the following limitations.  The
> first hypothetical would be limited to a light exertional level with no
> climbing, ladders, ropes or scaffolds, with the climbing of ramps and stairs,
> balancing, stooping, kneeling, crouching, and crawling all limited to
> frequently.  And with some mental limitations consistent with Exhibit 5F.
> …
> VE:   Ok, sir.
>
> ALJ:  Would there be any occupations existing in significant numbers in either
> the regional or national economy that this hypothetical person could
> perform?
>
> VE:   Yes, there would be.

(Tr. 54.)  In this case, Exhibit 5F is a Mental Residual Functional Capacity Assessment

form which was completed by one of the consultative examining psychologists, Dr.

O'Hagan, to whose opinion the ALJ gave great weight. (Tr. 256-259.) In that Exhibit, Dr. O'Hagan summarized his findings regarding Claimant's mental RFC in Section III of the document.[3] Specifically, Dr. O'Hagan found that Claimant has a moderate—not substantial—limitation in her ability to interact with the general public and seems able to function when social contact is minimized. (Tr. 259.) Dr. O'Hagan also found that Claimant could still work in coordination with and in proximity to others without being distracted by them, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and tolerate criticism when motivated and when it is appropriately delivered. (*Id.*) Dr. O'Hagan further found that Claimant had adequate concentration for basic activities, could persist at tasks within production norms, albeit at a slowed pace, and could sustain an ordinary routine without special supervision. (*Id.*)

Claimant's contention here is hyper-technical, to say the least. It is apparent from the RFC assessment completed by Dr. O'Hagan, to which the ALJ gave great weight, that Claimant would have no more than a moderate limitation in her ability to interact with the public, and would be able to work with a supervisor. It is further apparent that the ALJ in referencing those, among other limitations, in his hypothetical to the VE, adequately accounted for Claimant's ability to interact with the general public and supervisors. Therefore, the ALJ's decision is supported by substantial evidence and Claimant's argument must fail.

---

3 Section III of the form is where the state agency consultant records the actual mental residual functional capacity assessment. Programs Operations Manual System (POMS) DI 24510.06013.4.

## CONCLUSION

WHEREFORE, for the foregoing reasons, it is RECOMMENDED that the Commissioner's decision in this case be AFFIRMED.  Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this, the 15th day of August, 2013.

S/ STEPHEN HYLES
UNTED STATES MAGISTRATE JUDGE